**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| WHIRLPOOL CORPORATION, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 2:15-cv-2103-JRG |
| | § | <u>LEAD CASE</u> |
| AHMET MATT OZCAN d/b/a | § | |
| DISCOUNTFILTER, | § | |
| *Defendant*, | § | |
| | § | |
| | § | |
| WEI, ET AL., | § | Civil Action No. 2:16-cv-229-JRG |
| *Defendants*, | § | |
| | § | |
| | § | |
| PAVEL WATER FILTRATION, INC. and | § | Civil Action No. 2:16-cv-146-JRG |
| HENRY H. PAVEL, | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Joint Motion for Relief re: Claim Construction Proceedings (Dkt. No. 108) filed by Plaintiff Whirlpool Corporation ("Whirlpool") and Defendants Pavel Water Filtration, Inc. and Henry H. Pavel (collectively, "Pavel"). The Motion notes that the claims of the single patent at issue in this case, U.S. Patent No. 7,000,894 ("the '894 Patent"), have previously been construed by this Court in *Whirlpool Corporation v. TST Water, LLC*, Case No. 2:15-cv-1528, Dkt. No. 59 ("the *TST Water* case"). As such, Whirlpool and Pavel ask the Court to apply that previous construction—as well as the briefing, evidence, and hearing transcript related to that construction—as if it had been entered in the present case, thus eliminating the need for further claim construction proceedings in the present case.

However, also before the Court is the Joint Claim Construction and Prehearing Statement (Dkt. No. 107) filed by Plaintiff Whirlpool and Defendants Tianjin Jinghai Yunda Industry and

Trade Co, Ltd. a/k/a Yunda Industry and Trade Co. d/b/a Yunda Filter Co. ("Yunda"), Wayne Wei, and Rose Lu.[1] In that Statement, Defendant Yunda stipulates that the Court's claim construction in *TST Water* should apply as if entered in this case except for the Court's construction of the term "about 2 cm." As to that term, Plaintiff Whirlpool contends that no construction is necessary; however, Defendant Yunda argues that the term is indefinite.[2]

Given the narrow issue presented to the Court for claim construction, the Court ordered expedited claim construction briefing and held a hearing on December 19, 2016, on the issue of whether the term "about 2 cm" in Claims 1 and 27 of the '894 Patent is indefinite.

## I.    LEGAL STANDARD

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2 (2006).[3] A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 2124. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the patent application was filed. *Id.* at 2130. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *Id.* at 2130 n.10; *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

---

[1] As noted in the Responsive Claim Construction Brief filed by Defendants Yunda, Wei, and Lu, the individual defendants Wei and Lu rely entirely on Yunda for defending this lawsuit. (Dkt. No. 121, at 1 n.1.) As such, the Court refers only to Defendant Yunda in this Order.

[2] Defendant Yunda argues that the term "about 2 cm" is indefinite, but does not provide an alternative construction for the Court to consider.

[3] Although the Leahy-Smith America Invents Act enacted in 2011 amended § 112 slightly, the amended version does not apply to patent applications filed before September 16, 2012. *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2125 n.1 (2014).

## II.    ANALYSIS

The disputed term, found in Claims 1 and 27, is "about 2 cm."

| Plaintiff's Proposed Construction | Defendant Yunda's Proposed Construction |
|---|---|
| Plain and ordinary meaning, no construction necessary.<br><br>Alternatively, "approximately 2 centimeters." | Indefinite. |

Claim 1, as amended after reexamination,[4] recites:

1. An end piece for operatively engaging a head assembly, the head assembly comprising one or more valves, for the treatment and control of fluid passing through the head assembly, said end piece comprising:
   A. an end piece wall;
   B. an inlet fitting having a cam surface, said inlet fitting having a longitudinal axis; and
   C. an outlet fitting; and
   D. a protrusion having a longitudinal axis;
   Wherein said inlet fitting, said outlet fitting, and said protrusion extend from said end piece wall, wherein said protrusion is positioned between said inlet and said outlet fittings, wherein the distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is less than the distance from said longitudinal axis of said inlet to said longitudinal axis of said protrusion, and wherein the distance from <u>said longitudinal axis</u> of said inlet to said longitudinal axis of said protrusion is greater than the distance from said longitudinal axis of said outlet to said longitudinal axis of said protrusion, wherein the distance from said longitudinal axis of said inlet to said longitudinal axis of said outlet is about 2 cm, and wherein the distance from <u>said longitudinal axis</u> of said inlet to said longitudinal axis of said protrusion is about 2 cm, and wherein the distance from said longitudinal axis of said outlet to said longitudinal axis of said protrusion is about 2 cm, and wherein at least a portion of said cam surface is vectored from said longitudinal axis of said inlet fitting.

In short, the disputed term is used in Claims 1 and 27 to describe the spatial relationship between the longitudinal axes of three components of the claimed end piece in Claim 1 (and the claimed cartridge in Claim 27)—namely, the distance between the "inlet fitting" and the "outlet fitting" (L1), the distance between the "inlet fitting" and the "protrusion" (L2), and the distance

---

[4] The amendments made during reexamination are underlined.

between the "outlet fitting" and the "protrusion" (L3). The claims require that each distance (L1, L2, and L3) be "about 2 cm" in length. The claims further require that L1 be less than L2 and that L2 be greater than L3.

### a. The Parties' Positions

Plaintiff Whirlpool contends that the term "about 2 cm" informs those skilled in the art about the scope of the invention with reasonable certainty when the term is viewed in the context of the intrinsic evidence. (Dkt. No. 118, at 11.) Specifically, Plaintiff argues that the use of the term "about" signifies to one of skill in the art that exactitude is not required. (*Id.* at 11.) Plaintiff further notes that the specification employs the word "about" to describe each of the relevant distances, as well as to describe other dimensions not claimed here. (*Id.* at 11.) Finally, Whirlpool notes that the three claimed distances can be of different lengths and still all be "about 2 cm." (*Id.* at 13.)

Defendant Yunda responds with two primary arguments as to why the term "about 2 cm" is indefinite. First, pointing to the relative lengths of the distances (*i.e.*, the requirements that L1 be less than L2 and L2 be greater than L3), Yunda argues that it is unclear as to how "about 2 cm" can be both less than and greater than "about 2 cm." (Dkt. No. 121, at 5.) Second, Yunda argues that Plaintiff improperly broadened the scope of its claims during reexamination by adding the phrase "said longitudinal axis." (*Id.* at 7.) According to Yunda, the amendments changed the length of L2. *Id.*

Plaintiff Whirlpool replies that the patent's specification provides embodiments that illustrate how the three distances may be different lengths, but nonetheless still all be "about 2 cm." (Dkt. No. 123, at 1.) To Yunda's second argument, Plaintiff replies that the amendments made during reexamination served only to clarify the claims but not broaden them. (*Id.* at 1.)

Specifically, Plaintiff notes that the specification consistently uses the longitudinal axes of the three structures as the reference points for measuring the distances between each structure. (*Id.* at 2.)

### b. Application

In the *TST Water* case, this Court construed the term "about 2 cm" as having its plain meaning. Although the parties in the prior case did not address the issue of indefiniteness, after hearing arguments regarding indefiniteness in this case, the Court finds no reason to depart from its prior construction.

Having considered the arguments presented by the Parties, the Court finds that Yunda has failed to meet the high burden necessary to establish that the relevant claims are indefinite. Instead of submitting evidence, such as an expert declaration, to demonstrate the understanding of a person of ordinary skill in the art, Yunda relies entirely on attorney argument based on the patent's intrinsic evidence. The Court finds such argument unpersuasive.

First, Yunda's principal argument that the three relevant distances cannot have differing lengths and still all be "about 2 cm" fails by its own terms. Since exactitude is not required by use of the term "about," the claim limitations regarding differing lengths do not conflict with the requirement that each distance also be "about 2 cm."

Yunda's second argument regarding the amendment made during reexamination also fails to establish that the claim is indefinite. First, the longitudinal axis of the inlet fitting is used as the reference point for measuring distances from the inlet to other structures multiple times in the original claim language. Further, the patentee consistently used the longitudinal axes of the three components (the inlet, the outlet, and the protrusion) as the reference points for measuring the distances between each of the three structures. ('894 Patent, 5:42–59.) Finally, Figure 2A

illustrates that the distances L1, L2, and L3 are measured using the longitudinal axes as the points of reference. As such, a person of skill in the art would understand that "about 2 cm" is used to describe the distance between the longitudinal axes of the inlet fitting and the other relevant structures.

Accordingly, the Court finds that Yunda has not established by clear and convincing evidence that the term "about 2 cm" is indefinite. This fully addresses the issues raised in the Joint Claim Construction and Prehearing Statement (Dkt. No. 107).

## III. CONCLUSION

Since Defendant Yunda has failed to present sufficient evidence to show that the term "about 2 cm" is indefinite, the issue of indefiniteness need not be addressed at the previously scheduled claim construction hearing set for January 10, 2017. As no further claim construction issues have been raised, the Court hereby **CANCELS** the claim construction hearing previously scheduled to be held on January 10, 2017.

Given that all parties have otherwise stipulated that this Court's previous construction of the claim terms should apply, the Court hereby adopts in full the constructions set forth in its Memorandum Opinion and Order of July 22, 2016, in the *TST Water* case. (Dkt. No. 59 in 2:15-cv-1528.) Thus, the Joint Motion for Relief re: Claim Construction Proceedings filed by Plaintiff and the Pavel Defendants in this case (Dkt. No. 108) is effectively **GRANTED**.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the Parties are hereby **ORDERED**, in good faith, to mediate this case with the mediator previously appointed herein. As part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient independent authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of

settlement that might reasonably arise during such mediation. Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate. No party shall unilaterally terminate or exit the mediation session without the approval of the mediator. Otherwise the current rules for mediation in this district shall apply to all parties.

**So ORDERED and SIGNED this 28th day of December, 2016.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE